SAMUEL LINDSEY, plaintiff in error, *vs.* B. F. COCK *et al.*, defendants in error.

(McCAY, J., having been of counsel in this case, did not preside.)

A sheriff had received money in current State bank-bills before the war, in payment of the sale of property sold by him as sheriff, which money he was enjoined from paying over to the plaintiff, and pending the injunction he voluntarily loaned out the money, and took a note therefor, which was subsequently paid in Confederate money, which was worthless: *Held*, that he was liable for the value of the State bank-bills which he received for the sale of the property, at the time he was required to pay over the same to the plaintiff. *Held*, also, that when he was ruled for the money, and stated in his answer that the bank-bills received by him for the sale of the property had become of *little or no value*, he could not be made liable for the full value of the bank-bills upon *this answer*. If the answer was not true, that the bank-bills which he received were of but *little or no value*, then, the plaintiff had the right, under the 3878th section of the Code, to traverse the same, and to prove the value thereof, either by the sheriff himself, or other witnesses ; but until this is done, the answer of the sheriff is *prima facie* true, that the money which he received became worthless or nearly so in his hands. To entitle the plaintiff to judgment upon this answer, he must controvert it, and show that the bank-

bills were *not worthless*, and will be entitled to judgment for the amount the same are shown to be worth at the time he was required to pay over the money.

Rule against Sheriff. Relief Law. Decided by Judge HARRELL. Lee Superior Court. September Term, 1869.

A petition for a rule against Lindsey, former sheriff of said county, averred that, in September, 1856, as sheriff, he sold certain lands of A. H. Phillips, under *fi. fas.* against Phillips, and Zora B. Hayslip, his security, all of which were controlled by Hayslip, for $2,005, and besides that sum, received $145, from other sources, of which he paid Hayslip $1400, leaving in his hands a balance of $750, which Hayslip and Cock & Thompson each claimed, and therefore it was held by Lindsey, pending their litigation on that point; in March, 1869, Hayslip and Cock & Thompson agreed to divide this balance and jointly prayed that Lindsey show cause why he should not pay it into Court.

In his answer, Lindsey said he sold the lands for the $2,005 and paid $1400 of it, in October, 1866, to Hayslip, and paid Cock $161 31, at one time, and $26 24 at another, leaving in his hands $417 45, which he held up under notices from Cock & Thompson and the administrator of J. R. Rouse, subject to the order of the Court, and being always ready to comply therewith. This fund in his hands became the subject matter of litigation between Cock & Thompson and Hayslip, and Lindsey " desiring to secure himself as far as practicable against the responsibility which its custody imposed upon him, let the same out, receiving therefor a note on James Laramore for more than the fund; that said Laramore was perfectly good and solvent at the time respondent received said note on him; that during the late war Laramore tendered payment of said note to respondent, in Confederate Treasury notes, and respondent, under pressure of public opinion prevailing at that time, and not knowing but what said Confederate Treasury notes would prove as good, and as valuable as the bank-bills which had come into his hands by the sale of the land of Phillips, and which respon-

dent had let out as aforesaid, accepted the same in payment of said note. In this way, and with the utmost good faith on the part of respondent, said bank-bills came to be converted into Confederate money, which perished in his hands. He further said that he had been always ready to pay over said money had he had opportunity to do so, and could have done so safely to himself, before the ruin of Confederate money, but had had no opportunity, because the parties were still litigating over said fund, that even the bank-bills which he took "had become of little or no value" before such opportunity was presented. He said he had received no profit by this transaction and thought he should not be held liable for any amount, but claimed, if he was liable, "the benefit of the Relief Law," because this loss was not by his fault but by reason of the contesting claims of said parties, and stated that when he got said money he was worth $20,000, and by the results of the war and without his fault he had lost all but, say, $3,000 of said property. He also claimed that he had a right to retain $107 50 out of said money collected as costs due on *fi. fas.* against Phillips, under which he made said sales.

This answer was verified as required by the statute. To "so much of it as set up the loan of the $417 to Laramore, and the subsequent collection of said notes in Confederate Treasury notes, and the subsequent loss of the same, as a discharge of said Lindsey from any liability for said sum of money or any part thereof," and to "so much of it as sets up the Relief Law in protection of said Lindsey from liability for the whole amount of said money or any part thereof so in his hands," the movants demurred. The demurrer was sustained, the rule was made absolute against Lindsey for $417, provided that as to the $107 50 nothing more should be done till a trial should be had upon the issue joined as to that part of his answer.

Counsel for Lindsey say that said order of the Court was erroneous, because plaintiffs could not proceed by rule against Lindsey, his liability as sheriff having terminated upon the filing of said injunction bill; because pending said litigation

Lindsey *vs.* Cock *et al.*

Lindsey was a depository, and is entitled to show the loss or destruction of the fund without his fault, and be protected from liability as such fiduciaries are in law and equity ; because Lindsey in this case was entitled to the benefits of the "Relief Law;" because this was a proceeding in equity, and it would be inequitable to compel Lindsey to hold this fund and now pay it notwithstanding its loss or destruction by causes over which he had no control and in which plaintiffs participated.

By a note, after his certificate, the Judge said "the decision of the cause allowed Lindsey to show on what bank the bills were, with a view of charging him only for the value of the bills. The judgment of the Court was made on the rule *nisi*, the answer of defendant and the demurrer of plaintiffs, and upon no other facts not set forth in the rule *nisi*, answer and demurrer." There was no allusion to any bill in equity except that the rule had for its caption "Benjamin F. Cock and John Thompson *versus* Zora B. Hayslip, and Samuel Lindsy, sheriff. In Equity, in Lee Superior Court. Discovery. Relief and Injunction," and the rule recited as the reason why Lindsey had the money, that it "was claimed by Hayslip as his property, but his title thereto was contested by Benjamin F. Cock and John Thompson, and the settlement of the question as to whether said fund belonged to the said Benjamin F. Cock and John Thompson or to said Hayslip, formed one of the issues or matters of litigation in said cause in equity."

F. H. WEST, C. B. WOOTTEN, LOCHRANE & CLARK, for plaintiff in error, said Lindsey was but a trustee—2 Bouv. L. D. ; Davis vs. Collier, 13 Ga. R., 485—and therefore entitled to the benefit of the Relief Law. Acts 1868, page 148 ; Hudspeth vs. Johnson, 34 Ga. R., 403 ; as to liability of trustees, Campbell vs. Miller *et al.*, 38 Ga. R., 304.

HAWKINS & BURKE, R. F. LYON, for defendants.

WARNER, J.

The sheriff was liable for the value of the State bank-bills, which he received for the sale of the property at the time he was required to pay over the same to the plaintiff. The answer of the sheriff to the rule, which stated that the bank-bills received by him were of little or no value, was to be taken as true, unless traversed, as provided by the 3878th section of the Code. To have entitled the plaintiff to a judgment against the sheriff, he should have traversed his answer, and have shown, by competent evidence, that the bank-bills were not worthless, and then he would be entitled to a judgment against the sheriff for the amount the bank-bills were shown to have been worth at the time he was required to pay over the same. The plaintiff was not entitled to a judgment for the full amount of the State bank-bills against the sheriff at the time he received the same for the sale of the property, on the statement of facts set forth in his answer to the rule, which the demurrer thereto admitted to be true. Let the judgment of the Court below be reversed.